Today is agenda number 10, case number 107-242, People of the State of Illinois v. Tony Ousley. Good afternoon, Your Honors. May it please the Court, my name is Joan Frazier, Assistant State's Attorney for the People. Counsel. The trial court in this case had no discretion to deny the State's motion for use of immunity, and the appellate court's decision affirming the trial court's ruling was wrong on the facts and wrong as a matter of law. The use of immunity statute at Section 106-2.5b provides that on motion of the State, the trial court shall order that a witness be granted immunity on the basis of the privilege against self-incrimination. As a matter of statutory construction, it's clear that use of the word shall was meant to be mandatory. To contrast, the transactional immunity statute at Section 106-1 says immunity may be granted. And again, the use of immunity statute says shall be granted. When you have two statutes, and one is enacted after the other, and the intentional. So again, the transactional immunity statute says may, the use of immunity statute says shall. So it therefore should be viewed as intentional and mandatory. Ms. Frazier, when was Jackson's trial severed? It was in the process of being severed at the same time as the use of immunity motion was filed. It was in the process, the cases were being looked at. Was it officially at some point in time severed? It wasn't officially, but it's clearly in the record that it was understood that the cases were being severed. And the lower courts knew that the trials had been severed? Yes. If you look at the trial court transcript, you can even see the judge, where the judge says something to the effect of, I know that last time we talked about the motion to sever, has that been filed yet? And one day the attorney says, not yet, but we're doing that. And as a matter of fact, the proceedings were delayed somewhat because by the time the state filed the motion for use of immunity, Tyrese Jackson was being handled separately. In fact, the court delayed hearing on the motion for use of immunity because he wanted to wait and bring in Tyrese Jackson. So Jackson was being treated separately from Ousley and Atterbury. Would we have a different case if the lower courts didn't know that the Jackson case was in the process of being severed? No. The trial court had no discretion whatsoever once it was determined that the state's motion was in proper procedural form. The court had no discretion. Even with respect to, and I'm sure we'll hear the other side of this, a co-defendant? That's correct. That's correct. In this case, did the court state any basis other than Bruton and Crawford to support the denial of the use of immunity? No, Your Honor. That was it. It was a prospective ruling based on what might happen in the case. Now, the appellate court, one of the grounds for its ruling was that according to the court, the use of immunity was to abide by it. I heard the mandatory directory and mandatory permissive rules discussed twice this morning, so I won't belabor what the difference is. The court's been reminded. But, you know, in brief, the mandatory directory rule asks what are the consequences of the failure to follow a statute? Does it invalidate that statute? For example, in the Robinson case where the mandatory directory rule was at issue, the question was has the court failed to alert the defendant within 10 days that his post-conviction petition had been dismissed? Did that invalidate the court's ruling? A mandatory permissive analysis, which is what the appellate court should have used, questions is the language of the statute, does it have the force of a command imposing an obligation, or is it merely a grant of permission? Now, when the mandatory directory analysis is at issue, the word shall in a statute is not always positive. When it's mandatory permissive, as it was in this case, the understanding is the word shall indicates a mandatory intent. Back to my initial question, Ms. Fraser, the statute talks about witness, right? How do you address the defendant's argument that if the trial isn't severed? If Jackson's trial was not severed from the other co-defendants, that he's a defendant, not technically a witness? Of course, hypothetically, if it came to that point, if that's what had occurred, you might well have a Bruton problem. But in this case, the cases were being severed, and this case is a perfect illustration of why courts don't have the discretion. Because the lower court ruled on the basis of Bruton, and the appellate court mentioned it as well. What if the defendants are tried together? Then we can't issue the order. But the fact of the matter is, they were never going to be tried together, so the discussion of Bruton was totally hypothetical based on facts that were not going to come to pass. But I'm only interested in your, you know, the record will bear out what the record bears out, what the court knew at the time, whether it was severed or not. Yes. But your answer to the initial question was that it's mandatory even if we're dealing with a co-defendant. Even if there was never a discussion of severing in this case. That's correct. And then it's a later problem for a later time, I guess is what you're saying. That's exactly what I'm saying. Because at the time, first of all, you come in with a presumption that the state knows what it's doing. And we acknowledge from the word go that Jackson's statement would not come in if he was still a co-defendant. So we acknowledge that. But the point is, and two of the cases I cited address this, Bersi and Inmate D'Uso, that it's at the time of trial that it becomes relevant for the court to look at whether a witness's testimony is admissible. For example, in Bersi, it was a federal case where the question was the defendants were granted immunity and they wanted advance ruling on whether the questions that they would be asked at a federal grand jury hearing were relevant or not. And the court on appeal said no. The court doesn't have any discretion under the federal statute, which by the way, reads the same as the state statute. And it's not until you get to trial or get to grand jury hearing, you answer or refuse to answer that a determination should be made whether that testimony is admissible. The same thing happened in Inmate D'Uso, which I think addresses the court's question, where the witness was given immunity and the defendant appealed and went to the appellate court and said he shouldn't have been given immunity. The state has more than sufficient evidence to indict. He should be acquitted. And the court said no, you don't need this witness's testimony in the grand jury. And the New Jersey Supreme Court reversed the appellate court, saying no, the attorney general in that case decides when to grant D'Uso immunity. As long as you present your motion to the trial court in proper procedural form, it should be granted. It's not until matters come to a head, until the case goes to trial, until the grand jury hearing, that it's decided to grant D'Uso immunity. And it makes perfect sense. And again, this case illustrates it exactly. That when the state comes forward and asks for a grant of D'Uso immunity, it knows the parameter of its case. It knows what testimony it needs. And the trial court doesn't. It can't. And it doesn't know at that point what's going to happen. And so... I mean, you've already indicated it's certainly problematic if it was never severed. And maybe you're correct, that even if, well, let's just say, assuming arguendo, you are correct, that it's mandatory. Is it mandatory only when the co-defendant case is officially severed? Is it mandatory only when the defendant is a witness rather than a defendant in the action? No, because our position is that the court, beyond looking at the procedural adequacy of the state's motion, should not be conducting any sort of substantive review. Because, again, the court doesn't know and can't know exactly what the position of the posture of the case will be by the time it is severed. So no. Okay. And you think it's a moot point here anyway, because if they weren't aware, they should have been aware that the case was being severed? When you say they, you mean the co-defendants? I mean the trial. I mean the courts, the lower court, the appellate court, the trial court. Oh, yes. Yes, definitely. Speaking of mootness, is there any issue of mootness since Jackson has pled guilty? No, because we still need a means of compelling his testimony. He could still file a late notice of appeal with regard to his conviction. There's always a means to compel him to testify. And furthermore, as a practical matter, we need the Supreme Court's interpretation of the statute. The Supreme Court has never interpreted the use of immunity statute at all. So as a means of public policy and because we still need Mr. Jackson's testimony, no, there is no concern. Addressing some of the defendant's specific arguments briefly, defendants argue in their briefs that they filed a motion in limine in response to our motion for use of immunity, and therefore we should have made an offer of proof. First of all, it was not a motion in limine. It was simply a response to the people's motion for use of immunity. Second of all, even if there were a requirement, it was not a motion in limine. It was simply a response to the people's motion for use of immunity. When the defendants made the motion, which there isn't, that the state make an offer of proof, the defendants had Jackson's videotape and they know what he was likely to say. On the same subject, the defendants argued that the state did not vouch for Jackson's veracity. The short answer is that we don't have to vouch for a witness's veracity at the point that we're asking for a motion, we're asking for a grant of use of immunity. If the defendants have charged and I believe the court will soon hear that we're trying to backdoor the videotape statement that we're trying to backdoor the videotape statement that he's not going to testify in cross-examination, when I say he, I mean Jackson, if Tyrese Jackson's veracity is in question, the time for the defendants to probe that is on cross-examination. It's not when we file a motion for use of immunity. Defendants argued that Jackson was a co-defendant and not a material witness within the meaning of the immunity statute. Now, of course, there's no support for the notion that a co-defendant can never be a witness. I've cited a number of federal cases where you had co-defendants whose cases were severed or they were tried later or whatever their case may have been, co-defendants who later became witnesses testifying against their co-defendants. So that's not an issue. In terms of material witness, the use of immunity statute does not call for a material witness. The transactional immunity statute does, but not the use of immunity. The defendants, the last point I want to make is the defendants say the state's motion for use of immunity was not in a proper procedural format and that we didn't set any parameters on our request for use of use of immunity. You know, the parameters are in the statute. They're set forth in the statute. Use of immunity is for a witness in a criminal case who has information, whose information directly or indirectly derived from the production of the evidence. If the witness has refused or is likely to refuse to produce the evidence on the basis of his or her privilege against self-incrimination. To the extent that the immunity statutes have been interpreted, our motion was definitely procedurally appropriate. The agreement wasn't right, the motion wasn't writing. It was on behalf of a witness, not a defendant. It's for and is for a criminal case. So defendants haven't cited any case showing that there was anything procedurally improper about the state's motion for use of immunity. Therefore, because the trial court had no discretion to deny the motion for use of immunity, we would ask that the appellate court's decision be reversed and that the trial court be ordered to grant our motion for use of immunity against Tyrese Jackson. Thank you. May it please this Honorable Supreme Court, Mr. Chief Justice, Justices, Jason Danielian on behalf of Tony Owsley. What I'd like to do is respond to some of counsel's arguments, and I'd like to discuss the issue of what constitutes a witness versus a defendant placing this immunity issue in its proper context. And Mr. Garf will address the equally important issue as to whether or not a defendant has the right to use immunity. And whether or not granting a witness immunity precludes an evidentiary hearing, precludes a determination as to the relevance or prejudicial nature of any witness who testifies, whether that witness be immunized or not. The operative word in the statute is not shall. The operative word in the statute is witness. All of the cases that deal with this immunity issue deal with witnesses. All of the cases that counsel cites deal with witnesses. Either a person who has not been charged or a person who has pled guilty and then testified. None of the cases that counsel cites and none of the case law deals with an immunized person as being one who has a pending case, not a pending co-defendant. And I will address each and every one of the cases which actually establish this clear distinction between one as a witness and one as a defendant. Justice Thomas raised the issue as to whether or not there was indeed a severance in this case. Mr. Garf and I were the attorneys, the trial attorneys of record. Clearly, Tyrese Jackson's case was to be severed from ours because Tyrese Jackson had given a videotaped statement. And so had the cases remained together and we had a joint trial, then in that joint trial, the State would have introduced Jackson's statement, which a trier of fact, be that judge or jury, would have been able to determine whether or not Tyrese Jackson had given a videotaped statement. But the problem is this. The purpose for having a severance motion is to protect the defendant. But if you accept counsel's argument as true, it actually creates a disincentive for co-defendants to sever. In other words, if we were to know that the State was going to seek immunity for Tyrese Jackson, then why would we sever the case? Because, according to counsel, it's the severance which gives them the green light, which gives them the confidence that the State is going to seek immunity for Tyrese Jackson. And the State is going to have to have a conduit in order to call Tyrese Jackson as a witness. In other words, if the trial isn't severed, then they can't give use immunity, which, and that appears to be her position. But it is our position that when we're viewing all of the cases, it's clear that the statute applies to witnesses and not defendants. In the Lee case, for instance, the operative language in the Lee case, when dealing with that case, is that the State is going to seek immunity. The court said in criminal, the immunity issue would be inapplicable here as they deal with immunity for witnesses rather than defendants. This is a case where the defendant himself had both a pending case and a probation hearing. And he himself sought immunity for himself as a witness, claiming that he should have immunity so that if he testified in his violation of probation hearing, that testimony couldn't be used against him in a substantive case. The court rejected that, and in rejecting that, created a class of immunized persons. The class distinction that the court created was that of being witnesses rather than defendants. Now, the other cases in which, that deal with this issue of immunity, there's one in particular, the Adams case, where the court, the State gave immunity to a witness. The State then chose not to call that witness. The defense attorney wanted that witness immunized. The courts, while the lower court indicated that it hadn't immunized the witness, however, the appellate court conceded that the trial court had granted the witness immunity, and once witness immunity is granted to the witness, it cannot be withdrawn. But in that case, the problem with the trial attorney was that he failed to call that person as a witness. In other words, even though the State wasn't going to call the immunized witness, the defense attorney had the opportunity to call that previously immunized witness as his, which raises the most important question. Can a defendant ever call a co-defendant as a witness in his own case? Could Mr. Goff or myself call Tyrese Jackson as our own witness? Certainly not. So the distinction is this. A witness is a witness, and a defendant is a defendant. Now, use of immunity is a powerful tool that prosecutors can use. Counsel, one moment. Is your statement that you couldn't call a defendant the belief that the defendant would exercise his Fifth Amendment right? One of the reasons why we couldn't, primarily yes. Yes. And so then what would be the purpose for us calling that witness? And we could flip that around. If we intended to call a co-defendant as a witness, couldn't the State then file a motion in limine, demand and offer a proof as to us as to what it is that you believe this witness is going to testify to? Or do we just simply call the defendant the co-defendant? I don't believe we can I'm asking if you ever would call the defendant. The question is whether you have a right to, whether you could call the defendant. I don't believe we could call that co-defendant. Okay. Now, the State has this tool, use of immunity. It's in place for one reason. In the charging stages, the State can do one of many things. It can charge a person and prosecute them. It can charge a person with the intent later on to flip them, cut them a deal so they testify against the co-defendant, and then it's on the table, they testify as a witness who has been given a deal. They can treat that person simply as a witness because they simply are the witness. But then you get into that middle ground where you're dealing with someone who you intend to use as a witness but clearly has Fifth Amendment protection. And so what do you do in order to have that person testify as a witness? You call them to the grand jury. And I parenthetically, the two cases that counsel cited, those were witnesses, they weren't defendants, they were people who were given immunity on the front end and testified in the grand jury. So you give that person, you bring that person to the grand jury. What does that person do? That person can either waive the Fifth Amendment right and then they become a witness, or they can invoke their Fifth Amendment right. So the prosecutor now in good faith has to decide one of two things. Do I trample on this person's Fifth Amendment right and coerce them? Of course not. What do you do? Well, I want to prosecute the case. Do I abandon this person as a witness? No. I grant that witness use immunity. And that's how it works. It works on the front end, not on the back end. You don't give somebody use immunity and then prosecute them later on. That was the downfall in the case involving the attorney general where there was some ambiguity as to whether or not use immunity or transactional immunity was conferred upon the person who they ultimately charged. When would you ever charge a person with a crime after giving them immunity? And that's the dynamic of all this. The fear is this. If you allow the state to call defendants as witnesses and give defendants immunity, you're creating an entire class of a hybrid between a witness and a defendant. In other words, you could charge five people, a person who's accountable, marginally accountable, clearly accountable, a primary participant in the crime, the shooter or the getaway driver, that sort of thing. Then instead of treating some of them as witnesses, some of them as potential flip defendants, some of them as the person against whom you're clearly seeking to prosecute in good faith, you just sort of treat them all as some kind of witness-defendant thing. And then what do you do? In this person's trial, you call this person this defendant's. In defendant A's trial, you call B, C, D, and E. In defendant B's trial, you give the other's immunity and have them testify against him. And so you blur this entire distinction. I mean, we can never call a defendant. We can't call defendants to testify in our case, in the Penning case. We can't do that because they're defendants. They're not witnesses. Isn't it more accurate if you can't call them because you don't have the right to grant immunity? That's true. We don't have the right to. It's clear that the defendant does not have the right to grant immunity. But the twist on that is that once a witness is given immunity, according to the appellate court, that immunity cannot be withdrawn. And so in the case of a true witness, if the state had given a true witness immunity and then chose not to call that true witness, I could still call that witness. I could subpoena that witness to testify. I could get them on the stand and call them as my witness. Since I cannot do that with a defendant, it logically follows there is that distinction between one is a witness and one is a defendant. The spirit of the statute, the word witness means witness. You can't amorph that distinction between a witness and a defendant. The state can do it on the front end. In other words, that's when good charging decisions take place, when you decide who you're going to treat as a witness and who you're going to treat as a defendant. But you can't treat everybody as a witness and a defendant at the same time in a joint trial. It just doesn't – Would the state be prohibited from charging all these individuals separately and doing the same thing? I'm not drawing the distinction as separately. Separately. I mean, we charge your guy in case number one and somebody else in case number two and somebody else in case number three. They're all charged separately. But presumably that charging decision is made on the front end. Exactly. What I'm asking you is, is the result you're talking about the same if the person is a defendant in a separate case? No, the result isn't the same. The problem with dealing with this from a simply a severance standpoint, as I've suggested, it creates a disincentive for attorneys to sever their cases from the co-defendants. Because if they do sever, they're opening the door for use immunity. But whether the cases are severed or not, we're still dealing with a charged pending defendant. None of the cases that counsel cites deal with a charged pending defendant. Even the case, the federal case, she said that we – oh, no, not the federal case, Jackson's case. Counsel suggests that they couldn't call Jackson out to testify against Mr. Goff's client and mine. They can call him. His case is no longer pending. As a matter of fact, in one of the cases, the defendant tried to obtain immunity, claiming that if he were to testify and his case where he had been found guilty were to come back on appeal, then the state could use that evidence against him. And then the appellate court said that's pure speculation. We don't know what's going to happen on appeal. In the case of Tyrese Jackson, he pled guilty. What is he going to appeal? He's not appealing anything. He is now a witness, but he's no longer a defendant. He is a witness now. He does not have a pending case. And none of the other persons in any of the cases cited by counsel had pending cases. They were not pending defendants. They were witnesses. They were persons who pled guilty and then testified for whatever reason. But they were not pending defendants. I can distinguish each and every one of the cases. Justice Garmon's question to Ms. Frazier. Do we have a mood issue now? I mean, you just indicated, as we know, that Jackson pled guilty. You have no problem with he is now a witness. Your whole argument is that he was a defendant. Is this moot? I'm not certain that it's moot for two reasons. Number one, because what's at issue here is the propriety of the trial court's decision-making, which Mr. Goff is going to address this issue of on-offer proof. I don't believe it's moot. Secondly, because of the state's claim that the appellate court erred, and that issue needs to be resolved. It apparently needs to be resolved as to whether or not the appellate court respectfully erred in its decision-making process. But with respect to the possibility that Tyrese Jackson could now ever be called as a co-defendant immunized defendant, forgive me, that factual scenario is moot. It's impossible now because he's pled guilty. He's no longer a pending defendant. So we get to it as some type of exception of the mootness doctrine, is what you're saying is moot? Well, with all due respect, this is an important issue, because I think the problem is that use immunity has not been... We're with you. We didn't take it to say it was moot. The problem is that use immunity, being that powerful tool, has never been used correctly. The problem is when you try to amorph use immunity to salvage a case where the real important decisions, the charging decisions, are used on the front end. That's what makes good prosecution. Mr. Goff and I, we've handled accountability, gang cases, the shooter, the driver, the person with knowledge plus, that whole scenario there. And you have to make important decisions on the front end as to who's a witness and who isn't. So if a person is arguably accountable and they raise their Fifth Amendment right, which they legitimately have a right to do, what do you do as a prosecutor? Do you somehow try to knock them off that right? Of course not. That's the time where you give that person use immunity, because they're clearly a witness. You have no intention of charging them later on, but you need them, and that's the price you pay. Or you take a defendant and you cut a deal with his attorney. If he testifies against the shooter, we'll give him a deal. Or if a person pleads guilty, you make as a condition of his plea that he be locked in against the co-defendant, and then later on, if the co-defendant tries to call this person who's now pled guilty, then you have a transcript. And now you know. Everything's on the table. And I'd like to turn it over to Mr. Goff, unless there are any questions involving this witness versus defendant. One question. At the outset, you said the key word was witness, not shell. Are you conceding that it's mandatory if we find that Jackson is a witness? Well, I'm conceding that it's mandatory to the extent that the state provides its application. But this is a good moment to bring Mr. Goff in, because it still is subject to rules of evidence and the judge's discretion as the gatekeeper of the trial. And Mr. Goff is going to draw that distinction between what really amounts to an application process versus substance. And I do point out one final thing. When Judge Panici rendered his ruling, although he did grapple with the constitutional issues, his primary concern with allowing the state to grant use immunity was the fact that Tyrese Jackson was a co-defendant. So he dealt with this witness versus defendant issue and then moved on to the constitutional issues. It's clear in his ruling. And with that, if I may, turn it over to Mr. Goff. Excuse me. May it please the court, counsel? I guess there are a couple points that possibly the state and I agree upon. One being that this is a case of first impression. And as Justice Thomas pointed out, regardless, I believe that specifically it is moot with regard to the specific aspects of Tyrese Jackson and how it relates to the trial of our clients. But beyond that, I think in the way the state's attorneys, depending upon how this court rules and what the state of Alabama rules, I think the way the state of Illinois is going to do with its immunity statute is going to be a very powerful tool for state's attorneys in every county. The state is trying to say with the mandatory language that shall means shall testify. And, Your Honors, I would state that and I believe what the appellate court was trying to say is we still need to preserve some of the trial court's discretion in ruling on evidentiary matters, severance issues, and whether Brady comes up. In the case before us, or I guess what I'm encouraging is if you look at immunity and how use of immunity is applied, you can kind of look at it as a spectrum. I believe the intent of the statute, the original intent of that statute, was to take a witness that the state has identified prior to anyone being convicted as a key witness to whatever crime there has been committed. And granting use of immunity or applying for the grant of use of immunity to get that witness's testimony. Again, the key point is here is that that witness is obviously going to raise a Fifth Amendment issue. The state is then going to seek use of immunity to remove that Fifth Amendment issue and then take that witness's statement. That would be on the center of the spectrum, be basically a pro forma, go to the court, this witness is key, and get that immunity. Now, if we go beyond that, if we start moving down that spectrum after individuals have been charged, indictments have come down, now we've got a situation where if the state is asking for a grant of use of immunity at this point, the antennas are going to go up. They should go up on the trial court, they should go up on the defense attorneys. What has changed now? After all of the discovery process is going along, why are we all of a sudden asking, is the state asking for a grant of use of immunity to this witness? And obviously something has changed. And that is kind of why what we're encouraging this court to look at in this use of immunity analysis is that you can't say that it's mandatory, that shall means shall and shall means testify, because, and I think the appellate court was looking at it, it could possibly end up in an absurd result. The trial court still needs to be that gatekeeper of the fairness. The trial court still needs to be assured that any of that testimony, anyone who's a witness, that that witness is going to testify, is going to be relevant, that it's not going to be prejudicial. And, you know, in other, and I guess discovery, you know, there are discovery issues. It would be Brady. What's now coming from this witness that the state hasn't tendered earlier? So there's still the core of what goes on in that trial courtroom, and I believe that's the... I'm sorry. What is the problem with the state continuing to build its case after indictment? I'm not saying that that's a problem, Your Honor. I guess what I'm saying is that the state can surely keep building their case, but what I'm saying... Well, I guess what I'm saying is, Judge, is that the court still needs to play a role in making sure that whatever testimony the state intends to bring before the trier of fact still is credible, reliable, and... Well, that's a great question, but why is that anybody's concern? And I know the obvious answer is to the benefit of the defendant shouldn't be convicted on anything besides credible testimony. But presuming that the state at this point wants credible testimony to build their case, why should anybody be concerned about that than the state? The state stands to be the loser. And if the evidence is not credible, are you going to be able to attack that at trial? Well, I think that goes to the ultimate issue, is whether or not we would be able to attack that. And I haven't even gotten to the end of the spectrum where we're talking about a charged co-defendant, because with a charged co-defendant... A charged co-defendant being the one who gets the grant of immunity, you mean? Correct. I mean, I think there it's crucial. I mean, Justice Thomas had mentioned severance. I mean, severance wouldn't exist anymore, and I think that's kind of what the appellate court was going at with the joint trial. If you're able to grant a charged co-defendant who's given a statement, he's in effect, there is no severance. They're going to say, okay, you know what, we're going to give him use of immunity, and he's going to come in and testify. Well, how can you say there is no severance? Why can't it be severed at that point, and why wouldn't it be severed? I mean, it would be a routine severance. Those two people can't be tried together. Correct. And that's my point, Your Honor, is that... I'm sorry, just so we have time. You seem to suggest that there cannot be a severance at that point, and that these cases will be bound together no matter what happens. And my answer to that is, no, there'll be a severance. Of course, I'm starting to wonder whether we should really take this case if it's moved, to tell you the truth. That's right. Should I... Well, I guess... How can there not be a severance in that circumstance? Well, I guess it would be, I guess we're really talking about semantics. In this case, because Tyrese Jackson gave a statement, as a matter of law, his case would be severed from the co-defendants, so a separatrior fact would hear those issues. You'd expect that to happen in any circumstance. Forget about use immunity. He has a videotaped statement that is cause for a severance right there. Correct. And what I'm saying is, by the state granting use immunity to a charged co-defendant, severance is now out the window, because now that co-defendant is now going to testify, is going to take the stand in my client's trial. But by the time he takes the stand, he's not going to be a defendant in your case any longer, a co-defendant. Well, again, I think if you look at a technical, thin view of severance in the semantics... Well, there's only one view to take. Severance, severance, severance the case. But the prior fact is still going to hear from a co-defendant. And the purpose of severance is to keep the prior fact from hearing that testimony. But that's because you don't have the right to cross-examine him. In this instance, you will have the right to cross-examine him. Well, depending upon if he gets up there and takes the fifth and doesn't testify, I think that would be highly prejudicial. I think it would be, too, and I think that can be avoided. If I were you, I'd ask that there be a voir dire on that issue before the witness testifies, and I'm almost certain it'd have to be granted. Well, and your Honor, that's really what we're getting at, is that I think that's the type of discretion that the trial court needs to be vested with to be able to do that. And that's really what we're asking. The state's saying that no, shall means shall testify, and that's all forward. You know, Mr. Danielian, and I don't want to put words in his mouth, but I think his argument on severance is that if a co-defendant is going to be declared a witness by the mere fact that the case is severed, then he's going to have to testify. If the case is severed, then why would co-defendants want the case severed? I think that's what he said. I think Chief Justice Fitzgerald brings up some points, though. There's other reasons to want a case severed than the fact that use of immunity would be granted in that severance, right? I mean, there's other context you can think of. You'd still want the case severed for those reasons. Sure. But I think just the fact that a co-defendant that's being forced and put onto the stand, and if that statement's going to come in one way or another, whether he's going to sit there and testify or whether the state's going to try and bring it in, in other ways. Thank you. Unless there's any other questions. There's been a lot of talk this morning about the difference between a defendant and a witness under the statute. And I think the witness, the statute itself clearly defines what a witness is. It says in Section 106-2.5B that a witness is someone who has refused or is likely to refuse to produce the evidence on the basis of evidence. And I think that's a good point. And so I think the focus shouldn't be on is it a co-defendant, a defendant, a witness, a material witness. It's is it someone who is going to act as a witness at trial who meets the criteria set forth in that statute. Defense counsel said this morning they could distinguish every single case that we cited and that none of them match these circumstances, because none of them meet the criteria set forth in that statute. And so I think that's a good point. I would draw the court's attention to the Graves case I cited in my brief, where it involved a co-defendant who was compelled to testify in an earlier separate trial of a defendant. I draw the court's attention to the Kember case, holding that the court could compel immunized testimony of a convicted defendant at a trial of a co-defendant, even though the testifying co-defendant faced a second trial. I draw the court's attention to the Hamilton case I cited, which says that the fact that a witness may be under indictment for the same or related offense as defendant does not render him unavailable, because he can be granted use immunity. So in fact the cases are not distinguishable. Defendants also argued this morning that they can't call a co-defendant as a witness, and that's their concern. Well, the main point is, is that if a witness is given use immunity and testifies at a trial, he certainly can't call a co-defendant as a witness. He's certainly subject to cross-examination. And the fact of the matter is that the appellate court in People v. Ham held that the defendant cannot require a state's attorney to obtain use immunity for a defense witness. So that's how the statute's been interpreted. Again, we still have a situation where Jackson is refusing to testify. There's always a possibility he can file a post-conviction petition, he could file a late notice of appeal, or he could file a post-conviction petition. There's still the possibility that he could rely on his right against self-incrimination. There's all, again, I stress that I'm hypothesizing, but there's always a possibility of federal charge, would the court be exercising dual sovereignty. It can't be said that there's no circumstance under which he could not use a motion for use immunity. We believe, we still believe he, we know that he won't testify, and we still believe that a grant of use immunity would make a difference in this case. Certainly the charges are still pending against the co-defendants. We still need his testimony. And again, even apart from that, I would urge the court to consider a public policy exception. It's an important question. It's one that occurs. And again, this court has never interpreted that statute. And it's important that it does. So we ask that this court reverse the appellate court decision. Thank you. Thank you all, counsel.